# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

**MOODY NATIONAL RI**
**ATLANTA H, LLC;**
**TIC RI ATLANTA 1, LLC;**
**TIC RI ATLANTA 2, LLC;**
**TIC RI ATLANTA 3, LLC;**
**TIC RI ATLANTA 4, LLC;**
**TIC RI ATLANTA 5, LLC;**
**TIC RI ATLANTA 6, LLC;**
**TIC RI ATLANTA 7, LLC;**
**TIC RI ATLANTA 8, LLC;**
**TIC RI ATLANTA 9, LLC;**
**TIC RI ATLANTA 11, LLC;**
**TIC RI ATLANTA 12, LLC;**
**TIC RI ATLANTA 13, LLC;**
**TIC RI ATLANTA 14, LLC;**
**TIC RI ATLANTA 15, LLC;**
**TIC RI ATLANTA 16, LLC;**
**TIC RI ATLANTA 17, LLC;**
**TIC RI ATLANTA 19, LLC;**
**TIC RI ATLANTA 20, LLC;**
**TIC RI ATLANTA 22, LLC;**
**TIC RI ATLANTA 23, LLC;**
**TIC RI ATLANTA 24, LLC;**
**TIC RI ATLANTA 25, LLC;**
**TIC RI ATLANTA 26, LLC;**
**TIC RI ATLANTA 28, LLC;**
**TIC RI ATLANTA 29, LLC;**
**TIC RI ATLANTA 30, LLC;**
**TIC RI ATLANTA 31, LLC;**
**TIC RI ATLANTA 32, LLC,**

**1:09-cv-3676-WSD**

        **Plaintiffs,**

**v.**

**RLJ III FINANCE ATLANTA, LLC,**

                                    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Plaintiffs Moody National RI Atlanta H, LLC, et al.,'s ("Plaintiffs") Motion for a Temporary Restraining Order and Preliminary Injunction [2].

## I.     BACKGROUND

On August 31, 2007, Plaintiff Moody National RI Atlanta H, LLC and Moody National RI Atlanta S, LLC executed a fixed rate note (the "Note") for $10,932,000.00 payable to Citigroup Global Markets Realty Corp. ("Citigroup"). Repayment of the Note was secured by a security deed (the "Security Deed") encumbering a hotel property located at 1041 W. Peachtree Street, Atlanta, Georgia (the "Property").  Moody National RI Atlanta S, LLC's interest in the Property, and obligations under the Note, was subsequently transferred to thirty-two (32) tenants in common, the TIC Plaintiffs in this action.[1]

In January 2009, Plaintiffs were fourteen (14) days late in paying the monthly principal and interest payment under the terms of the Note.  In February,

---

[1] Two of the TICs, numbers 18 and 27, later withdrew from the venture, and are not a party to this action.

Plaintiffs' payment was fourteen (14) days late. In March, Plaintiffs' payment was seventeen (17) days late. On March 9, 2009, Citigroup demanded immediate payment of default interest due under the Note, which had accrued as a result of Plaintiffs' late January and February payments, and which was allowed to be assessed pursuant to Paragraph 4 of the Note. Citigroup, in addition to invoicing the recurring monthly principal and interest payments under the Note, invoiced default interest charges for January, February and March on Plaintiffs' April monthly billing statement. Plaintiffs timely paid the regular monthly principal and interest payment invoiced on the April statement, but did not pay the invoiced default interest charges for January, February, and March.

Plaintiffs paid the principal and interest payments in May, June, July and August by the date required by the Note.[2] Plaintiffs paid the September payment one (1) day late, and made October's principal and interest payment on time. The default interest charges associated with Plaintiffs' January, February and March payments continued to be invoiced to Plaintiffs, but they were not paid. On

---

[2] Plaintiffs' verified Complaint indicates that the monthly principal and interest payments required under the Note were not timely paid in any month in 2009. According to Plaintiffs, the April and May payments were each one (1) day late; the June payment was two (2) days late; the July and August payments were each two (2) days late; the September payment was three (3) days late; and the October payment was one (1) day late. These late payments are not reflected in the payment schedule Defendant provided.

Plaintiffs' November bill, the outstanding default interest charge for those months was invoiced as due and owing in the aggregate amount of $81,990.00.

Plaintiffs contend that in March 2009, Plaintiffs and Citigroup agreed to begin loan modification discussions. In connection with these negotiations, on October 8, 2009, Plaintiffs and Citigroup executed four (4) additional loan documents: i) a new "Lock Box Agreement"; ii) a new "Clearing Account Agreement"; iii) a new "Operating Account Control Agreement"; and iv) a new "Amended and Restated Cash Management Agreement," (the "New Procedure Documents"). On October 14, 2009, Plaintiffs and Citigroup agreed to a pre-negotiation letter (the "Discussion Letter") documenting their intent to participate in various discussions in connection with the parties' obligations under the loan documents, including the default interest that Plaintiffs were required to pay under the Note. The Discussion Letter addressed the contours of their discussion. It began by stating that on "May 9, 2009, Lender provided the Borrowers [Plaintiffs] with notice that an Event of Default . . . exists under the Loan." The Discussion Letter stated further that "[n]o party . . . shall have any obligation to commence such discussions or, if commenced, to continue such discussions." The letter stated that Citigroup would enter into the discussions only if Plaintiffs agreed to various conditions, including that no party could rely on any statement or representation

made "until it was expressly incorporated into a final definitive written agreement executed and delivered by an authorized representative of the party to be charged" . . . and that "the Loan documents are and shall remain in full force and effect and unmodified, unless and until amended or modified by (and only to the extent provided in) a definitive written agreement executed by the parties thereto after the date, and in accordance with the provisions, of this letter agreement." The Discussion Letter said also that any "acceptance now, or at any time in the future, . . . by Lender of any full or partial payments many be applied by Lender to interest, principal, fees, or other amounts due under and in accordance with any of the Loan Documents, and shall not be deemed to constitute: (i) an agreement amending, modifying or qualifying in any respect the terms and provisions of the Loan Documents; [or] (ii) a waiver be Lender of any rights or remedies under the Loan Documents, or under applicable law or in equity." Plaintiffs agreed to these terms by signing the Discussion Letter.

In their discussions, Plaintiffs explored with Citigroup the possibility of waiving the default interest charges that they owed, including the January, February, and March default interest charges which had been invoiced to, but were not paid by, Plaintiffs. The parties did not enter into a definitive written agreement

to change or alter Plaintiffs' payment obligations under the Note or Security Deed or to waive default interest, in whole or in part.

On November 3, 2009, Citigroup transferred and assigned the Note and Security Deed to Defendant. Plaintiffs again made their November loan payment late. On November 25, 2009, Defendant notified Plaintiffs by letter that within ten (10) days Plaintiffs were required to pay all outstanding default interest and late charges.[3] Defendant stated that if its demands were not satisfied by December 7, 2009, it would initiate a foreclosure of the Property under the Security Deed. On December 2, Plaintiffs sent a letter to Defendant's counsel requesting that Defendant acknowledge that Plaintiffs had discussed with Citigroup that "Citi's representations indicated that default interest would be waived when the loan was modified and brought current." On December 5, Defendant replied that it was not aware of an agreement being reached by the parties, that it does not agree to waive the requirement that delinquent loan charges be paid, and reiterated the demand it made on November 25, 2009, that Plaintiffs owed $443,270.53 in default interest

_____

[3] Defendant also demanded that Plaintiffs cure three (3) other alleged defaults under the loan by: providing certain financial statements; satisfying an outstanding materialman's lien against the property; and paying the 2008 property taxes. Evidently, the lien had already been satisfied and the property taxes were paid before Defendant sent its November 25 letter. Plaintiffs also provided Defendant with the financial statements demanded. Defendant acknowledges these events are not events of default under the Note or Security Deed.

and late charges resulting from Plaintiffs' failure to make its monthly principal and interest payments when due, and that this amount had to be paid by December 7.

Plaintiffs' December bill stated that outstanding default interest and late fees totaled $91,090.78 and it set forth the December principal and interest payment that was required to be made. Plaintiffs did not make the required December payment, did not pay the invoiced default interest and fees, and did not pay any other remittance to Defendant. Plaintiffs again requested that Defendant waive the default interest and requested a breakdown of the $443,270.53. In their December 7, 2009, letter to Defendant, Plaintiffs stated that the amount $443,270.53 that Defendant asserted was outstanding was "not consistent with the mortgage statements."[4] Plaintiffs stated again that it had conversations with Citigroup whose representative, Plaintiffs claim, "indicated that default interest would be waived when the loan was modified and brought current." Plaintiffs acknowledged that the amount they had been billed and that was due was $180,044.05. Plaintiffs requested "that [they] be permitted to perform in the manner that was presented to them by the former note holder and be allowed to bring the note current with the payment of monthly interest payments absent of default interest and late charges."

_____

[4] Plaintiffs did not state the amount asserted was inconsistent with the loan documents.

Plaintiffs did not claim that default interest or late charges had been improperly asserted under the Note or Security Deed. They did not contest that default interest was due and owing.

On December 11, Defendant published a foreclosure sale notice indicating a foreclosure sale of the Property on January 5, 2010.

On December 15, Defendant sent Plaintiffs a letter referencing an attached schedule intended to show how the default interest sum had been calculated.[5] According to Defendant's schedule, default interest was not limited to that which had been invoiced for January, February and March, but also had accrued through the months of April through November.

On December 24, 2009, eighteen (18) days after it was due, counsel retained by Plaintiffs in this dispute, tendered $85,705.59, the monthly principal and interest payment due for that month. They did not remit the default interest due. The tender of the principal and interest amount was conditioned on Defendant's "acceptance of same as and in full reinstatement of the loan." Plaintiffs' counsel also requested the immediate cessation of the pending foreclosure sale . . . failing which the Borrowers will seek injunctive relief and actual punitive monetary damages for wrongful disclosure." Defendant rejected Plaintiffs' tender,

---

[5] The schedule was not attached to Defendant's letter, but was faxed to Plaintiffs the next day.

accelerated the loan, and advised Plaintiffs that, absent full payment of the amount due under the Note and all other amounts due and owing, the foreclosure sale would proceed on January 5, 2010, as stated in the foreclosure notice published in early December 2009.

On December 30, 2009, Plaintiffs filed an action in the Superior Court of Fulton County, Georgia, for a temporary restraining order and injunctive relief, for a declaratory judgment that it did not owe default interest, and for damages related to wrongful foreclosure. On December 31, Defendant removed the action to this Court on the basis of diversity jurisdiction. That afternoon, the Court issued an Order temporarily restraining Defendant from conducting the foreclosure sale on January 5, 2010. On January 7, 2010, a hearing was conducted on Plaintiffs' application for a preliminary injunction to enjoin Defendant from foreclosing on the property secured by the Security Deed.[6]

## II. DISCUSSION

A.    <u>Standard for a Preliminary Injunction</u>

To be eligible for a temporary restraining order or preliminary injunctive relief under Rule 65 of the Federal Rules of Civil Procedure, a movant must

---

[6] The parties agreed that Defendant could proceed with the process for foreclosing on the Property in February 2010, pending the Court's decision, following the January hearing, on whether to continue the temporary restraining order to prohibit a February foreclosure.

establish each of the following elements: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest.  See Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005); Parker v. State Bd. of Pardons and Paroles, 275 F.3d 1032, 1034-35 (11th Cir. 2001).

Preliminary injunctive relief is a drastic and extraordinary remedy which should not be granted unless the movant can clearly establish each of the four elements.  Four Seasons Hotels and Resorts v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003).

B.    Analysis

Defendant asserts two separate defaults as the grounds allowing Defendant to assert its rights and remedies under the Secured Deed:  a) Plaintiffs' failure to pay outstanding default interest as demanded on November 25, 2009; and b) an untimely monthly payment in December.  Plaintiffs contend that the previous loan modification discussions it had with Citigroup, and specifically its decisions regarding past due default interest if the loan was modified and brought current, and the New Procedure Documents that were put in place, require Defendant to

give reasonable notice before demanding strict compliance with the terms of the loan documents. Plaintiffs contend such notice is required before Defendants may demand payment of default interest and, only if the Plaintiffs then failed to pay, could Defendant pursue its default remedies under the Note and Security Deed. Plaintiffs further argue that because Citigroup did not exercise its default remedies, including the right to accelerate the loan and the right to foreclose on the property, when Plaintiffs previously failed to pay the default interest assessed under the loan documents, the contractual relationship between the parties was effectively modified, and Defendant, as Citigroup's assignee, is bound by the agreed-upon modification not to charge default interest.[7] Plaintiffs also contend that default interest did not accrue during the months of April through November and that, at most, Plaintiffs owe $91,090.78, not the $443,270.53 Defendant demanded.[8] Finally, Plaintiffs contend that they were excused from paying their December

---

[7] Or, alternatively, to not charge it until it sent notice to Plaintiffs that Defendant was requiring it to be paid and gave Plaintiffs reasonable time to cure.

[8] Plaintiffs argued that Section 12(b) of the October 8, 2009, Amended Cash Management Agreement requires a forbearance period of 45 days before Defendant may exercise the right of foreclosure. At the January 7, 2009, hearing, Plaintiff's counsel conceded that this provision applied only if there had not been another default within the preceding twelve (12) months. Plaintiffs' acknowledged their late payment in November deprived them of the forbearance protection of Section 12(b), to the extent they were entitled to it under the circumstances in this case.

principal and interest payment. Plaintiffs argue that, without a clarification of the $433,270.53 that Defendant demanded as due and owing under the Note, if Plaintiffs paid the December payment, Defendant may have been entitled to apply the payment to any amounts due and owing other than the December principal and interest obligation. Plaintiffs claim they were entitled to information sufficient to understand what was claimed as due and owing before the December monthly payment was made. Mr. Moody, Plaintiffs' representative who testified at the hearing, stated he did not make payment in December 2009, including the $180,044.05 he acknowledged was owed, because he was afraid it would first be applied to other outstanding amounts first. Thus, Plaintiffs did not tender any payment until December 24 and then conditioned it upon Defendant's agreement that the Note and Security Deed be modified to extinguish Plaintiffs' default interest and that the loan be reinstated.

Plaintiffs, in asserting their position, rely on Section 13-4-4 of the Georgia Code, which provides:

> Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice.

O.C.G.A. § 13-4-4.  Plaintiffs argue that Citigroup, by accepting late payments in January, February, March, and September,[9] and by declining to exercise its default remedies under the Security Deed, despite Plaintiffs' failure to make timely payments or to pay default interest, departed from the terms of the Note and Security Deed in a manner sufficient to trigger the application of Section 13-4-4. Plaintiffs contend that through this conduct, and in their discussions to address Plaintiffs' failure to make timely payments under the loan documents, the parties had entered into a "quasi new agreement."  Thus, Plaintiffs contend, Defendant was required to give reasonable notice of an intention to require Plaintiffs to pay the amounts due and owing and to make future payments on time in accordance with the loan documents before Defendant would claim Plaintiffs are in default and pursue Defendant's default remedies.  Plaintiffs argue that in moving to foreclose on the Property without reasonable notice, Defendant also violated the duty of good faith.[10]

---

[9] According to Plaintiffs' version of the payment history, Citigroup accepted late payments in all months in 2009.

[10] Plaintiffs cite O.C.G.A. § 23-2-114 ("Powers of sale in deeds of trust, mortgages, and other instruments shall be strictly construed and shall be fairly exercised."); and Brown v. Freedman, 222 Ga. App. 213, 215 (1996) (noting power of sale in foreclosure must be exercised fairly).

1.  *Quasi new agreement*

The gravamen of Plaintiffs' argument is that the prior course of dealing between Citigroup and Plaintiffs created a "quasi new agreement." "In order to create such a quasi new agreement, the parties to the original agreement must mutually consent to the departure. . . . The provisions of a written contract may be waived by acts or conduct which justify the other party to believe the express provisions are waived, and even a contractual provision against waiver may be waived by conduct." Crawford v. First Nat. Bank of Rome, 137 Ga. App. 294, 295 (1976) (internal citations omitted). The creation of a quasi new agreement requires more than breach on the part of one of the parties; there must be a mutual departure. Id. at 296.

The Court looks to see whether the record demonstrates that the parties mutually departed from the written contract terms. The Court necessarily concludes a mutual departure was not intended and did not exist.

2.  *Default Interest*

Plaintiffs admit that they were assessed $91,090.78 in default interest charges and late fees. Plaintiffs note that Citicorp, although it demanded payment on March 9, 2009, did not accelerate the loan, move to foreclose on the property, or pursue any other default remedies under the Security Deed, despite Plaintiffs'

failure to pay. Thus, Plaintiffs contend, because Citigroup sufficiently departed

from the exact terms of the loan documents, O.C.G.A. § 13-4-4 now requires

reasonable notice before those terms may be strictly enforced.[11] The Court

disagrees.

The Court first notes the substantial dispute about the amount of default

interest actually at issue. Defendant contends that the default interest totals

$443,270.53, arguing that interest accrued not only for January, February and

March, as Plaintiffs concede, but also for April though November. The Court

finds, as a matter of contract interpretation, that Defendant's position is correct

under the terms of the Note. Paragraph 4 of the Note provides:

> Maker [i.e., Plaintiffs] does hereby agree that upon the occurrence and
> during the continuance of an Event of Default . . . Payee shall be
> entitled to receive and Maker shall pay interest on the entire unpaid
> principal sum at the rate of 5% above the Interest Rate (the "Default
> Rate"). The Default Rate shall be computed from the occurrence of
> the Event of Default until the actual receipt and collection of the Debt.

"Debt" is defined in Paragraph 3 as the "whole of unpaid principal sum of this

Note, together with all interest accrued and unpaid thereon, all interest accrued

---

[11] In correspondence to Defendant, Plaintiffs claimed that Citigroup had agreed to
waive default interest when the loan was modified. It is undisputed that no
agreement to waive default interest was ever reduced to writing and Plaintiffs
admitted at the January 7th hearing that Citigroup did not agree to waive default
interest owed, even though Plaintiff had hoped it would.

thereon, and all other sums due under the Mortgage . . . the Loan Documents and this Note." "Event of Default" is defined in Paragraph 22 of the Security Deed as:

> [A]ny one or more of the following:
>
> (a)    if Grantor fails to make any scheduled payment amount when the same is due under the Note . . .;
> (b)    if Grantor fails to pay any other monetary amount from time to time owing under the Note, this Deed to Secure Debt or any other Loan Document . . . within ten (10) days after written notice from Grantee to Grantor that the same is due[.]

Citigroup sent written notice to Plaintiffs on March 9, 2009, demanding immediate payment of default interest due under the Note, which had accrued as a result of Plaintiffs' late January and February payments. An "Event of Default" occurred ten (10) days later when Plaintiffs had not paid the demanded default interest. This triggered the Default Interest Rate, which is computed from the occurrence of the Event of Default until the actual receipt and collection of the Debt, here, the default interest demanded. Because Plaintiffs did not pay the demanded default interest, which Plaintiffs admit is owed, the Default Interest Rate continued to apply and, consequently, Plaintiffs default interest continued to accrue. While Plaintiffs may have believed that only $91,090.78 was outstanding, the terms of the Note provide for the computation of a far greater sum.

At the August 7, 2010, hearing, Plaintiffs' counsel conceded this interpretation of the Default Interest provision is correct, but argued that Citigroup,

by not actually *billing* Plaintiffs for this additional, accrued default interest, had departed from the terms of the Note and Security Deed.[12] Plaintiffs essentially argue that because they did not fully understand how default interest was calculated and because Citigroup did not bill them for or demand payment of the full amount owed, that Defendant should now be precluded from requiring payment of the full default interest permitted by the Note. Plaintiffs assert further that reasonable notice was required by O.C.G.A. Section 13-4-4 before Defendant may demand strict compliance under the Note, demand payment of default interest, or exercise its default remedies.

The Court concludes that the evidence in the record does not demonstrate a mutual intent on the part of Plaintiffs and Citigroup to depart from the terms of the loan documents or to otherwise modify or reform their agreement. The Discussion Letter discredits any argument that there was some new agreement. The letter

---

[12] On January 11, 2010, Plaintiffs filed a supplement that clarified their position regarding the manner in which default interest is calculated. Plaintiffs note that default interest is calculated only during the continuance of an Event of Default, and argue that unpaid default interest does not constitute a continuing Event of Default under the loan documents. Plaintiffs point to Paragraph 4 of the Note, which provides that default interest is "added to the Debt," and argue that there is no provision that treats default interest as a separate item payable on demand as a condition to curing a default. Plaintiffs argue that the Note is unclear as to when and how default interest is actually to be paid. For the reasons stated above, the Court rejects Plaintiffs' interpretation of the Note. In any event, Plaintiffs do not dispute that at least $91,090.78 in default interest was properly calculated under the express terms of the Note.

stated specifically that the parties obligations and rights were all intact unless a definitive written agreement was executed by the parties. The Court is not persuaded that Citigroup's election not to pursue default remedies over a period of a mere eight (8) months, while Plaintiffs attempted to persuade Citigroup to modify its loan and to waive default interest, is sufficient evidence to establish an intent to depart from the express contract terms negotiated by sophisticated business entities. That the parties were in negotiation to modify the loan also does not evidence a departure from or waiver of the binding terms of the loan documents. To the contrary, the negotiations show that Plaintiffs knew Citigroup was requiring Plaintiffs to comply with their obligations under the Note and Security Deed and was unwilling to waive or amend those obligations as evidenced by their failure to alter these loan documents as required by the documents themselves.

The Court observes that Plaintiffs were not actually billed for any default interest computed for the months of April through November. While this is noteworthy, the Court also notes that Wachovia, not Citigroup, serviced the loan and generated the monthly bills. Wachovia's failure to invoice accrued interest does not conclusively—or even presumptively— establish that Plaintiffs and

Citigroup intended to depart from the Note's default interest provision.  Plaintiffs'

reliance on O.C.G.A. § 13-4-4 to demand reasonable notice is misplaced.

The Court further concludes that the parties' course of conduct does not

establish an actual modification or reformation of the Note, Security Deed or other

loan documents.  The October 14, 2009, Discussion Letter, signed by Plaintiffs and

Citigroup, discredits the idea that Plaintiffs could have believed a quasi new

agreement had been reached.  <u>Crawford</u>, 137 Ga. App. at 295-96.  The letter

explicitly provides:

> 4.      Lender has not waived, and . . . is not waiving, any of its
> rights and remedies under any of the Loan Documents.
>
> 5.      Borrower, Guarantor and Master Tenant hereby
> acknowledges and agrees that the Loan Documents contain and
> constitute all of the agreements relating to the Loan among Lender,
> the Borrowers, and the Guarantor and that the Loan Documents are
> and shall remain in full force and effect and unmodified, unless and
> until amended or modified by (and only to the extent provided in) a
> definitive written agreement executed by the parties thereto . . . .

If Citigroup and Plaintiffs intended to modify or reform the default interest rate

provision of the Note, an alteration needed to be reduced to a definitive written

agreement.  Indeed, as late as mid-October, the parties expressly acknowledge they

had not agreed to revise the Note or Security Deed terms and that if they did ever

agree to alter them, the changes would be made in writing.  It is undisputed that the

parties did not enter into a writing to change the terms of the Note or Security

Deed. To the extent the parties intended actually to modify their agreement, they did so explicitly and in writing only by executing certain new loan documents, none of which modified Plaintiffs' payment obligations to Defendant. In fact, the parties confirmed their mutual intent to remain bound by the strict terms of the Note and Security Deed. Paragraph 13(b) of the Amended and Restated Cash Management Agreement provides:

> Except as expressly modified by this Agreement, the Security Interest, the Note and the other Loan Documents remain unmodified and in full force and effect and are ratified and confirmed by Borrower in their entirety. This Agreement, the Security Instrument, the Note and other Loan Documents contain the entire agreement between the parties hereto and thereto with respect of the transactions contemplated hereby and thereby, and all prior agreements among or between such parties, whether oral or written, between Borrower and/or it affiliates and Lender are superseded by the terms of this Agreement and the other Loan Documents.

The parties' course of conduct in 2009 does not demonstrate that Plaintiffs agreed to alter of the contractual obligations they negotiated and the Court cannot conclude, on the record before it, that Citigroup and Plaintiffs intended to modify the contract to such an extent that Plaintiffs' default interest obligation for $443,270.53 was extinguished—or reduced to $91,090.78.[13] Plaintiffs have not

---

[13] Plaintiffs do not dispute that at least $91,090.78 in default interest and late charges was due and owing under the express terms of the Note and Security Deed, even if Plaintiffs continue to maintain that Defendant is not entitled to require strict

met their burden to show that the explicit terms of the Note and other loan documents should be set aside based on the parties' course of conduct.

After Defendant purchased the Note, Defendant was entitled, by its express terms, to demand full payment of the outstanding default interest. On November 25, 2009, Defendant demanded that Plaintiffs pay, within ten (10) days, all outstanding default interest and late charges. Plaintiffs failed to do so. Defendant may now pursue its default remedies, including acceleration and foreclosure.[14]

   3. *Untimely December Payment*

It is undisputed that the Security Deed provides for default remedies, including the rights to accelerate the loan and foreclose on the Property, in the event that Plaintiffs fail timely to make a monthly payment of principal and interest.[15] Plaintiffs contend that its history of late payments in 2009 demonstrates a quasi new agreement.

---

compliance with those terms. See January 7, 2010, Hrg. Tr. at 7:18—8:4; 142:8—143:24.

[14] As the Court concluded above, the terms of the Note provide for default interest totaling $443,270.53. Even if the Court had found that Plaintiffs were entitled to reasonable notice before Defendant could enforce the exact terms of the Note, especially the amount owed in addition to the default interest for January, February, and March, the record suggests that Plaintiffs are not capable of strict compliance even with a notice period.

[15] Security Deed, ¶¶ 22(a) and 24.

The Court is not persuaded that Citigroup's willingness to accept late payments established a course of conduct sufficient to constitute a "departure" from the terms of the Note and trigger the application of O.C.G.A. Section 13-4-4. Plaintiffs contend that their monthly principal and interest payments were late every month in 2009. Defendant's record indicates a late payment for only the months of January, February, March, September, and November. Regardless of which version is accurate, this factual record does not establish that any party— Plaintiffs, Citigroup, or Citigroup's assignee—reasonably believed that the contractual terms of the Note had been dispensed with, and that Plaintiffs were free to disregard the most fundamental obligation of a borrower: to make timely monthly payments of interest and principal.[16, 17] Evidence that a lender accepted a partial payment is not a waiver of its rights under the loan agreement. Crawford, 137 Ga. App. at 296. The lender in such a situation merely accepts what was already due under the terms of the original agreement, and absent some

---

[16] Plaintiffs cite Curl v. Federal Savings and Loan Assoc., 241 Ga. 29 (1978), in which the Georgia Supreme Court found that when a lender accepted a homeowner's late payments for several years, a quasi new agreement had been reached and proper notice was required before a lender could require strict compliance. The record here shows that Citigroup accepted only four (4) late payments over a period of eleven (11) months before it sold the Note to Defendant.

[17] Plaintiffs explained that when they paid their monthly payments late, it was due to cash flow problems—not because they believed timely payment was not required.

consideration, a new agreement is not reached.  See id.  "The mere fact that the defendant paid some installments after they were due and in amounts less than the stipulated sum, without any subsequent agreement to do so and without any consideration therefor, would not be sufficient to show such a departure from the original contract as to require notice from the plaintiff of intention to comply with the strict terms thereof before the plaintiff could insist upon a forfeiture of the same."  Id.  Citigroup's acceptance of late payments is insufficient to show a departure from, or modification of, the original contract terms agreed to by the parties.

Indeed, the parties explicitly agreed that Citigroup's acceptance of late payments was not evidence that Plaintiffs' obligations under the Note and Security Deed had been modified.  The October 14, 2009, Discussion Letter specifically provides that Citigroup's acceptance of late payments "shall not be deemed to constitute: (i) an agreement amending, modifying or qualifying in any respect the terms and provisions of the Loan Documents; [or] (ii) a waiver be Lender of any rights or remedies under the Loan Documents, or under applicable law or in equity."

Plaintiffs next argue that the requirement that they make a timely December payment is excused because Defendant did not exercise good faith.  Plaintiffs

contend that when they received a demand for default interest far in excess of what they believed to be the correct amount that was even in dispute, they were "shell shocked," and unsure whether their December payment would actually be applied to satisfy the monthly payment requirement or whether Defendant would apply it to the purported default interest sum. Plaintiffs cite O.C.G.A. Section 13-4-23, which provides that "[i]f the nonperformance of a party to a contract is caused by the conduct of the opposite party, such conduct shall excuse the other party from performance."[18] Plaintiffs contend that Defendant's unexplained demand for $443,270.53 "caused" their nonperformance in making a timely December payment.[19] The Court finds this argument unpersuasive. Assuming Plaintiffs' fear that Defendant would apply a December payment to default interest charges was well-founded, Plaintiffs cannot claim Defendant's conduct caused nonperformance. Plaintiffs took a calculated risk by not making a timely payment, knowing that doing so was a breach of the Note, which explicitly provided for default remedies.

---

[18] Plaintiffs also cite <u>Fulton v. Anchor Savings Bank</u>, 215 Ga. App. 456, 467 (1994), in which a borrower's late payments were excused because the lender made timely payments difficult by moving offices and providing an incorrect address for payments. These facts are not analogous to Plaintiffs' claim that Defendant's demand confused them into not making a timely payment.

[19] Or any December payment at all. When Plaintiffs did attempt payment, it was conditioned on Defendant's agreeing to waive default interest charges.

Here Plaintiffs argue they are entitled to a different process for Defendant's exercise of the default rights than those to which Plaintiffs agreed in the loan documents. Plaintiff's argument is based on the claim that Plaintiffs and Citigroup agreed to a change of the terms of the Note, Security Deed, and other loan documents. Plaintiffs are unlikely to prevail on their theory.

Because Plaintiffs have failed to establish a likelihood of success on the merits, the Court need not consider the other elements necessary for a preliminary injunction. Plaintiffs' motion is required to be denied.

## III.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for a Temporary Restraining Order [2] is **DENIED** and the temporary restraining order issued by this Court on December 31, 2009, is **VACATED**.

**SO ORDERED** this 14th day of January, 2010.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE